A07A1803. IN THE INTEREST OF P. W., a child.
(657 SE2d 270)

ELLINGTON, Judge.

P. W., a child, appeals from an order of the Juvenile Court of Chatham County adjudicating her delinquent by reason of contempt of court for failing to write a 300-word apology letter and 500-word essay and for violating electronic monitoring while in her mother's custody. P. W. does not challenge the sufficiency of the evidence against her, asserting instead that the juvenile court (1) lacked the authority to order the composition of the essay and letter before it had concluded the adjudicatory part of her hearing; (2) erred when it failed to hold a dispositional hearing before sentencing her for contempt; and (3) lacked authority to sentence her to 20 days in detention. We affirm.

We review a juvenile court's adjudication of delinquency

> in a light most favorable to support the findings and judgment. Where a juvenile is charged with an offense which would constitute a crime if committed by an adult, the standard of proof in the lower court is beyond a reasonable doubt. Moreover, conflicts in the evidence are decided by the trier of fact, which was the juvenile court judge. And where issues of fact are in conflict, this court passes only on the sufficiency and not on the weight of the evidence.

*In the Interest of B. J. G.,* 234 Ga. App. 285 (1) (506 SE2d 449) (1998).

Viewed in the light most favorable to the adjudication of delinquency, the record shows that during an adjudication hearing on January 25, 2007, P. W., a 16-year-old, admitted to allegations of juvenile petitions that she had violated probation and had been truant.[1] On recommendation from P. W.'s probation officer, the juvenile court postponed final disposition until February 22 to determine whether P. W. was a good candidate for at-home monitoring. Shortly after the court advised P. W. that her behavior "between today and February 22 is going to have a lot to do with what your sentence is," the bailiff advised P. W. to "[t]ake [her] hands out of [her] pockets . . . and pay attention." The juvenile court then noted that P. W. had given

---

[1] The underlying petitions are numbers 0700264 and 0700296.

a "very aggressive look" at the bailiff. When the State characterized the look as "a matter of contempt," the juvenile court demurred, but noted that it was "disappointing . . . to try to have a conversation with a young lady who is rolling her eyes, smiling, laughing, giving dirty looks when the deputy directs [her] to take [her] hands out of [her] pocket[s]." At the conclusion of the hearing, the juvenile court ordered P. W. into detention overnight, moved up the dispositional hearing to 9:00 the following morning, and instructed P. W. to write a 300-word letter of apology to the bailiff as well as a 500-word essay on "appropriate behavior in court and the importance of obeying the rules."

At the hearing on the morning of January 26, P. W. produced neither the letter nor the essay. The State also noted that P. W. had violated her electronic monitoring by leaving her mother's house for ten to fifteen minutes on the early morning of January 23. After a bench conference and a recess, the district attorney drew up a petition for contempt for failing to write the letter and essay and violating electronic monitoring. With counsel's consent, the court then heard testimony concerning the essay. A juvenile corrections officer testified that P. W. had been given the opportunity to write the essay but had refused to do so. The trial court continued the hearing and released P. W. on house arrest and electronic monitoring.

Three days later, on January 29, 2007, the juvenile court heard additional testimony concerning P. W.'s electronic monitoring violation. P. W. denied that she had left the house on the early morning of January 23, claiming instead that she had been reading a book in her mother's bedroom at 4:00 a.m. The juvenile court then found that P. W. had lied on the stand and that the State had proved contempt of court beyond a reasonable doubt. The court then sentenced P. W. to 20 days in detention, noting that P. W. was delinquent by reason of being in contempt of court and that she was "in need of further treatment, supervision, and rehabilitation."

1. P. W. first argues that the juvenile court lacked the authority to require her to write the letter and essay without first filing a petition, and that as a result, P. W.'s failure to comply could not serve as the basis for a later charge of contempt of court. We disagree.

It is axiomatic that a juvenile court is charged with considering a child's best interest. *In the Interest of Y. E.*, 229 Ga. App. 506, 507 (1) (494 SE2d 297) (1997); *T. K. v. State of Ga.*, 126 Ga. App. 269, 274 (1) (190 SE2d 588) (1972). As P. W. concedes, moreover, a juvenile court may order a child to write an essay as punishment for an adjudicated offense. *In the Interest of J. E. H.*, 202 Ga. App. 29 (413 SE2d 227) (1991) (court was authorized to require a 2,500-word essay as punishment after adjudication of traffic violation). We have seen no authority suggesting that a juvenile court does not have the power,

held by many a teacher and administrator, to order the composition of writings of reasonable length as in a child's best interest. See id. The juvenile court's finding of contempt was also supported by evidence that P. W. had violated her electronic monitoring. See *In the Interest of B. J. G.*, 234 Ga. App. at 286 (1) (evidence was sufficient to support finding of delinquency for curfew violation). There was no error here.

2. P. W. also argues that the juvenile court erred when it failed to conduct a dispositional hearing before imposing its sentence. We disagree.

OCGA § 15-11-65 (a) provides that

> [i]f the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he or she is alleged to be delinquent or unruly, *it shall proceed immediately or at a later time to conduct a dispositional hearing* for the purpose of hearing evidence as to whether the child is in need of treatment, rehabilitation, or supervision and shall make and file its findings thereon.

(Emphasis supplied.) Here, having concluded both phases of its adjudicatory hearing, and having found P. W. guilty of contempt beyond a reasonable doubt, the juvenile court proceeded immediately to a dispositional hearing at which P. W. had an opportunity to be heard and to give evidence. P. W. neither objected to this procedure nor offered any additional evidence, and has thus waived any assertion of error on appeal. See *In the Interest of Y. E.*, 229 Ga. App. at 507-508 (2) (counsel's failure to request a continuance or otherwise raise the issue of appointment just before a dispositional hearing waives the issue of adequate representation on appeal).

3. Finally, P. W. cites OCGA § 15-11-66 (b) (1) for the proposition that the juvenile court was empowered to sentence her to up to 60 days in detention only if she had been adjudicated delinquent under at least one of the conditions specified in that subsection, none of which applied in this case.[2] We disagree.

---

[2] OCGA § 15-11-66 (b) (1) provides:
. . . If the child is adjudicated for the commission of a delinquent act, the court may in its discretion in those cases involving: (A) *a violation of probation involving another adjudicated delinquent act and upon the court making a finding of fact that the child has failed to respond to the graduated alternative sanctions set forth in paragraph (2) of this subsection* . . . , order the child to serve up to a maximum of 60 days in a youth development center, or after assessment and with the court's approval, in a treatment program provided by the Department of Juvenile Justice or the juvenile court.
(Emphasis supplied.)

OCGA § 15-11-5 (a) provides:

> In addition to all other inherent powers of the court to enforce its lawful orders, the court may punish *a person* for contempt of court for willfully disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders, subject to the law relating to the procedures therefor and the limitations thereon.

(Emphasis supplied.) There is nothing in this statute to indicate an intent to limit the contempt power of any Georgia court to adults alone. Although OCGA § 15-11-5 (b) specifies additional penalties for "a parent, guardian, or other custodian" who wilfully violates a juvenile court order, the subsection quoted above makes no distinction between juveniles and adults. Finally, OCGA § 15-6-8 (5) authorizes a superior court to punish contempt "by fines not exceeding $500.00 and by imprisonment not exceeding 20 days," and we have recently repeated that juvenile courts possess the same lawful authority. See *In re Jefferson*, 284 Ga. App. 877, 879 (1) (645 SE2d 349) (2007) (affirming juvenile court's power to impose penalty of imprisonment on contemning counsel). There was no error here.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JANUARY 25, 2008.

*Harold P. DuCloux III, Leigh S. Schrope, Jimmonique R. S. Rodgers*, for appellant.

*Spencer Lawton, Jr., District Attorney, Jeffrey S. Hendrix, Assistant District Attorney*, for appellee.